UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MELVIN BRECHT,<br><br>    Plaintiff,<br><br>vs.<br><br>ICC AND CCA MEDICAL DEPARTMENT, ACEL K. THACKER, TIM WENGLER, BARBARA WARD,<br><br>    Defendants. | Case No. 1:12-cv-00243-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a Motion to Dismiss for Failure to Exhaust Administrative Remedies and Motion for Summary Judgment filed by Defendants Acel Thacker, Timothy Wengler, and Barbara Ward. (Dkt. 47.) The Motions are now fully briefed. All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 9.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Having reviewed the record in this matter, and otherwise being fully informed, the Court enters the following Order.

## CONSIDERATION OF MOTION TO DISMISS

At the time the allegations arose, Plaintiff was a prisoner housed at the Idaho Correctional Center (ICC). Plaintiff is proceeding on his Amended Complaint alleging

Eighth and Fourteenth Amendment claims against Defendants Acel Thacker, Warden Tim Wengler, and Nurse Barbara Ward regarding inadequate medical care for a hernia, mouth cancer,[1] cataracts, and inflammation to Plaintiff's head. (Dkt. 29, 30.) Defendants assert entitlement to dismissal under Federal Rule of Civil Procedure 12(b).

**1.      Standard of Law**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*, a prisoner is required to exhaust all of his administrative remedies within the prison system before he can include the claim in a new or ongoing civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a); *Cano v. Taylor*, – F.3d –, 2014 WL 114684 (9th Cir. 2014) (exhaustion of a claim may occur prior to filing suit or during the suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials

---

[1] Plaintiff has not been diagnosed with cancer, but surmises that he has cancer, because he alleges that he was a participant in Dr. Heller's radiation program from 1969 and 1970, and several other inmates had developed cancer, manifested in bumps and sores on the head. (Dkt. 51-1, pp. 1-2.)

should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

Failure to exhaust is an affirmative defense that is "subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for lack of exhaustion, the Court "may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120. If a prisoner has failed to exhaust his administrative remedies, the appropriate remedy is dismissal without prejudice. *Id.*

The defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant does so, "the burden shifts to the plaintiff to show that the administrative remedies were unavailable." *Albino v. Baca*, 697 F.3d 1023, 1031 (9th Cir. 2012). Confusing or contradictory information given to a prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937.

Administrative remedies will be deemed unavailable and exhaustion excused where the prison improperly screened or processed an inmate's grievance, *Sapp v. Kimbrell*, 623 F.3d 813 (9th Cir. 2010); prison officials misinformed an inmate regarding grievance procedures, even if innocently done, *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010); or "jail staff affirmatively interfered with his ability to exhaust administrative remedies." *Albino*, 697 F.3d at 1033.

Administrative remedies are also considered "unavailable" where "remedies were

"not known and unknowable with reasonable effort." *Albino*, 697 F.3d at 1037. It is not enough that the prisoner was subjectively unaware of proper grievance procedures. He must also show that "his unawareness was objectively reasonable" – that he "could not have discovered the grievance procedure with reasonable effort." *Id.* at 1038 ("Albino fails to dispute that the Custody Division Manual described the grievance procedure in § 5–12/010.00, that jail policies required every housing unit to have an adequate supply of Inmate Complaint Forms, or that locked grievance repositories existed in each housing unit"). In addition, "a good faith effort on the part of inmates to exhaust a prison's administrative remedies [is] a prerequisite to finding remedies effectively unavailable." *Id*. at 1035.

## 2. ICC Grievance Procedure

ICC follows IDOC's three-stage inmate grievance process. The Declaration of Margaret Purcell, ICC Grievance Coordinator, sets forth the grievances procedures. (Purcell Decl., Dkt. 47-5.)

First, any inmate with a concern is required to seek an informal resolution by filling out an Offender Concern Form, addressed to the staff person "most capable of responding to and, if appropriate, resolving the issue." (Purcell Decl., Dkt. 47-5, at ¶11.) If the issue cannot be resolved informally through the use of a concern form, the inmate must then file a grievance form. (*Id.* at ¶12.) A grievance form must be filed no later than 30 days after the incident giving rise to the grievance. (*Id.*)

When submitting a grievance, the inmate must attach a copy of the concern form,

showing the inmate's attempt to settle the issue informally. Grievances must contain "specific information including the nature of the complaint, dates, places, and names" and must be signed by the inmate. The inmate can only raise one issue per grievance. The staff member "most capable of responding to and, if appropriate, resolving the issue" must answer any properly completed grievance. (*Id.* at ¶13.) After a "reviewing authority, who is usually a deputy warden," reviews the staff member's response, the inmate is notified of the disposition of the grievance. (*Id.*)

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision within 14 days of receiving the response to the grievance. (*Id.* at ¶14.) The "appellate authority," usually the head of the prison, must issue his or her decision on the appeal within 16 days. (*Id.* at ¶15.) Not until the completion of all three steps (concern form, grievance form, and grievance appeal) is the grievance process exhausted. (*Id.* at ¶16.)

3.  **Facts and Discussion**

Plaintiff complains that he needed hernia surgery and cataract surgery. He submitted a grievance on July 29, 2011. The grievance was returned to Plaintiff without action for the following reasons: (1) it was filed beyond the 30-day deadline from the date of the alleged problems (July 2008 was the date the hernia surgery was denied, and April 2010 was the date the cataract surgery was denied); (2) it had no attached concern forms; and (3) it was typed, even though the form requires that it be completed in handwriting. (Purcell Decl., Dkt. 47-5, ¶ 21.) Plaintiff did not file a corrected grievance. (*Id.*, ¶¶ 21-

**MEMORANDUM DECISION AND ORDER - 5**

23.)

Beyond the hernia and cataract issues, Plaintiff complains that he was denied cancer treatment for his mouth in 2006 and 2008. He also complains that a condition of inflammation of his head was left untreated. However, there is no record in the ICC grievance system that Plaintiff filed or attempted to file any other grievance between the time periods of January 1, 2009, to July 9, 2012. (Purcell Decl., Dkt. 47-5, ¶ 20.) While Plaintiff completed various *concern forms* relating to the alleged lack of medical treatment (Dkt. 1-2, p. 22-29; Dkt. 1-3, pp. 19-31; Dkt. 54-2), he did not proceed to the step of filing a grievance, which alerts higher-level authorities of existing problems not remedied by lower-level staff. (Purcell Dec., Dkt. 47-5, ¶ 22.) Plaintiff does not allege that he filed another grievance other than on July 29, 2011. Plaintiff's civil rights complaint was received for filing by the Ada County Clerk on November 17, 2011; Defendants later removed the case to federal court.

Based on the foregoing, Defendants have met their initial burden of showing Plaintiff did not exhaust his remedies. Plaintiff makes several arguments why he should be excused from completing the exhaustion process.

Plaintiff argues that he was transferred nine times between October 22, 2007, and December 11, 2008, including a five-and-a-half month transfer to a prison in Oklahoma. (Dkt.. 52; 52-1.) Plaintiff was housed at ICC (the facility at issue here) from October 23, 2007, until February 14, 2008, and then again after February 9, 2010. (Def. SOF, p. 1.) Plaintiff generally alleges that all of the transfers "significantly thwarted" his efforts to

file a grievance, but he provides no supporting facts. Plaintiff provides no evidence showing that he attempted to complete any grievances before or after his transfers, or to complain to prison authorities that the transfers were interfering with his ability to file grievances about his medical problems.

Plaintiff also alleges that he "received no directions on how to file [a] grievance" at ICC. (Plaintiff Decl., Dkt. 51-10, p. 1.) The ICC facility is an IDOC prison operated by a private company, Corrections Corporation of America, contract to the IDOC. As Purcell states, ICC follows IDOC grievance procedures, and new ICC inmates are given a handbook explaining the grievance process when they arrive at ICC. (Purcell Decl., Dkt. 47-5, pp. 2-3.)

The Court takes judicial notice of three other grievances Plaintiff filed during the relevant time period at two other prison facilities in another federal civil rights case: (1) grievance of 03/12/08 at IMSI, regarding his typewriter and bakery job, stating that if he could not have his typewriter at IMSI, he would request a return transfer to ICC (Case No. 1:09-cv-00243-EJL, Dkt. 3-1, p. 26); (2) grievance of 11/29/08 at ISCI, regarding property damaged upon his return from Oklahoma (*Id.*, p. 12); and (3) grievance of 12/8/08 at ISCI (illegible) (*Id.*, p. 11).[2] In light of ICC's handbook and these grievances filed at IMSI and ISCI, Plaintiff's assertion that he did not know how to file a grievance

---

[2] When a court is considering a motion to dismiss, it may take judicial notice of matters of public record, such as state and federal court proceedings, and doing so does not convert a motion for summary dismissal into a motion for summary judgment. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1281 (9th Cir. 1986); Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

**MEMORANDUM DECISION AND ORDER - 7**

at ICC is not credible. In addition, these contemporaneous grievances filed at other institutions show that he had sufficient knowledge and ability to *ask* ICC staff about the grievance procedures, to determine whether they differed from the ISCI and IMSI procedures, but he did not.

Further, at the time Plaintiff's July 29, 2011 grievance was returned to him, he was given instructions for the correct filing of a grievance. (Dkt. 47-8.) While the Court agrees with Plaintiff that the instructions do not clearly invite him to re-file that particular grievance, he certainly could have filed another grievance for current medical care issues.

Plaintiff also argues that the grievance procedures were unavailable, because, "[y]ou cannot file a grievance from another institution." (Dkt. 52, p. 4.) The grievance policy shows this assertion is untrue. (Dkt. 47-7, p. 7.) Plaintiff provides nothing demonstrating that he exercised diligence in trying to file a grievance after his transfer, and his three other grievances from his separate lawsuit show that he had the knowledge and ability to determine whether an inter-facility grievance could be filed.

Plaintiff also alleges that he was transferred for retaliatory reasons. (Dkt. 51-8, p. 1.) However, the other three grievances show that Plaintiff, in fact, was able to file grievances, despite the alleged retaliation.

Plaintiff further cites to several pages of another case authored by Judge Edward Lodge from the United States District Court for the District of Idaho (which is instructive but not a case of precedent for this Court). That case is distinguishable because, there, the plaintiff alleged that he filed grievances that were not logged by ICC; here, Plaintiff does

**MEMORANDUM DECISION AND ORDER - 8**

not claim to have filed any grievance other than the July 24, 2011 grievance, a copy of which was retained by ICC. (Dkt. 51-11, pp. 2-3.) "Lost" grievances are not at issue here.

Plaintiff also alleges that, because the rejection form stated, "You did not file the grievance or appeal within the time limit," and the grievance response stated, "This issue may be too late to grieve as you have 30 days to file a grievance," the Court should consider Plaintiff's administrative remedies exhausted. However, *proper* exhaustion is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. at 90-91. The proper remedy for failing to exhaust one's remedies in compliance with prison rules is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d at 1120.

4.     **Conclusion**

Defendants have met their burden to show failure to exhaust by submitting evidence establishing that "(1) a grievance procedure existed and (2) [Plaintiff] did not exhaust the grievance procedure." *Albino*, 697 F.3d at 1032. Plaintiff does not dispute that he did not complete the grievance process, including an appeal to the warden, for any of his claims. The Court concludes that exhaustion is not excused by any of Plaintiff's allegations or arguments presented in his briefing.

Accordingly, Plaintiff's Amended Complaint will be dismissed without prejudice. The Court does not reach the defenses set forth in the summary judgment motion.

Plaintiff's Motion Requesting to Stay Further Proceedings of This Case until June

1, 2015 (Plaintiff's full-term release date) (Dkt. 54, p. 14), will be denied, because staying a case containing only unexhausted claims would be futile.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion Requesting Extension for More Time to File Answer (Dkt. 50) is GRANTED. the Response filed at Docket 51 was timely filed and has been considered.

2. Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies (Dkt. 47) is GRANTED, and their Motion for Summary Judgment (Dkt. 47) is MOOT.

3. Plaintiff's Amended Complaint, and this entire action, are DISMISSED without prejudice.

4. Plaintiff's Motion Requesting to Stay Further Proceedings of This Case until June 1, 2015 (Plaintiff's full-term release date) (Dkt. 54, p. 14) is DENIED.

DATED: February 5, 2014

Honorable Candy W. Dale
United States Magistrate Judge